UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

| | |
|---|---|
| LAUREN VANWORMER, *et al.*, | |
| Plaintiffs, | Case No. C25-2386-MLP |
| v. | ORDER |
| URBAN OUTFITTERS, INC., | |
| Defendant. | |

## I.    INTRODUCTION

This matter is before the Court on: (1) Defendant Urban Outfitters, Inc.'s ("Defendant") Motion to Transfer Class Action Complaint ("Transfer Motion" (dkt. # 16)); (2) Defendant's Motion to Compel Arbitration and Stay Action ("Arbitration Motion" (dkt. # 18)); and (3) Plaintiffs Lauren VanWormer and Mallory Santic's (together, "Plaintiffs") Motion to Certify Question of Law to the Washington Supreme Court ("Certification Motion" (dkt. # 33)). Plaintiffs filed oppositions to Defendant's Motions ("Transfer Resp." (dkt. # 26); "Arbitration Resp." (dkt. # 25)), and Defendant filed replies ("Transfer Reply" (dkt. # 27); "Arbitration Reply" (dkt. # 28)). Defendant filed an opposition to Plaintiffs' Certification Motion ("Certification Resp." (dkt. # 34)), and Plaintiff did not file a reply.

ORDER - 1

## II.    BACKGROUND

Plaintiffs seek to represent a class of Washington consumers to whom Defendant allegedly sent false and misleading email marketing. (Compl. (dkt. # 1-1).) Defendant contends this dispute must be adjudicated in another forum because Plaintiffs entered into enforceable contracts with forum selection and arbitration provisions. (Transfer Mot., Arbitration Mot.)

Defendant submits a declaration from Senior Manager of Enterprise Technology Michael Schur stating that Plaintiffs created "UO Rewards" accounts on Defendant's website in 2018 and 2019. (Schur Decl. (dkt. # 17), ¶¶ 4, 26, 29.) The registration page is shown below:

(*Id.*, Ex. A.) To register, Plaintiffs were required to click the large black button labeled "Create an Account," which is positioned directly above small text stating that, "[b]y creating an account, you agree to Urban Outfitters terms of use and privacy policy." (*Id.*, ¶ 4.) The underlined terms were hyperlinked; the "terms of use" link led to a page (the "Terms") that informed users that

ORDER - 2

they "irrevocably submit to the exclusive jurisdiction of the federal and state courts of the State of Pennsylvania." (*Id.*, ¶¶ 5-7, Ex. B at 16; *see also id.*, Exs. D at 27, G at 44.)

Both Plaintiffs made multiple purchases on Defendant's website, Ms. Santic most recently in February 2021 and Ms. VanWormer in February 2025. (Schur Decl., ¶¶ 27, 30.) A redacted sample of the payment screen is shown below:



(*Id.*, Ex. C; *see also id.*, Ex. F.) To make a purchase, users were required to click the large button labeled "Place Order," which is positioned above text stating that, by placing an order, users have agreed to Defendant's "terms of use" and "arbitration agreement." (*Id.*, ¶¶ 8-9, Ex. C.) The underlined terms hyperlink to the Terms page and to a page titled "Urban Outfitters Arbitration Agreement." (*Id.*, ¶ 9.) The Arbitration Agreement page provided that "any controversy, claim,

ORDER - 3

action, or dispute in any way related to your use of any Urban Outfitters website, any purchase from Urban Outfitters, or to any products or services sold or distributed by Urban Outfitters . . . will be resolved by this dispute resolution procedure and arbitration agreement[.]" (*Id.*, ¶¶ 13-14, 17, Ex. E; *see also id.*, ¶¶ 21-22, Ex. H.)

### III.    DISCUSSION

Defendant contends that both Plaintiffs entered into valid contracts with enforceable venue and arbitration provisions when they clicked the "Create an Account" or "Place Order" buttons. Plaintiffs respond that no contract was formed because the underlined language, in tiny print, was not conspicuous enough to give them notice.

### A.    The Parties Entered into a Contract via the UO Rewards Program

In the context of online agreements, a contract is formed if the user had "actual or constructive notice of the provisions." *Wilson v. Huuuge, Inc.*, 944 F.3d 1212, 1219 (9th Cir. 2019) (applying Washington law[1]). Absent actual notice, "an enforceable contract will be found based on an inquiry notice theory only if: (1) the website provides reasonably conspicuous notice of the terms to which the consumer will be bound; and (2) the consumer takes some action, such as clicking a button or checking a box, that unambiguously manifests his or her assent to those terms." *Berman v. Freedom Fin. Network, LLC*, 30 F.4th 849, 856 (9th Cir. 2022). The second requirement was met here when Plaintiffs clicked buttons manifesting assent while signing up for the UO Rewards program.[2]

---

[1] Where different states' law would "apply substantially similar rules, we need not engage in a detailed choice-of-law analysis." *Oberstein v. Live Nation Entm't, Inc.*, 60 F.4th 505, 515 (9th Cir. 2023) (cleaned up). Neither party argues that another state's law should apply or that the choice of law would alter the outcome.

[2] Plaintiffs appear to suggest that they may have signed up for UO Rewards some other way than using the website, but offer no evidence or even allegations in support. (Transfer Resp. at 4, 10.) The Court may

ORDER - 4

Courts recognize a spectrum of methods to provide constructive or inquiry notice. At one end are generally unenforceable "browsewrap" contracts, which purport to bind users who merely visit the website, and at the other end are generally enforceable "clickwrap" or "scrollwrap" contracts, which present the contract terms and require clicking a button stating agreement with those terms before proceeding. *Keebaugh v. Warner Bros. Entm't Inc.*, 100 F.4th 1005, 1014 (9th Cir. 2024). In between are "sign-in wrap" agreements like the one at issue here. *Id.* These are enforceable where the notice of terms is sufficiently conspicuous. *Id.*

"[T]o be conspicuous in this context, a notice must be displayed in a font size and format such that the court can fairly assume that a reasonably prudent Internet user would have seen it." *Berman*, 30 F.4th at 856. Terms may be disclosed through hyperlinks; however, "the fact that a hyperlink is present must be readily apparent." *Id.* at 857.

In addition to "visual aspects," including "placement of the notice," the Ninth Circuit has held that courts must consider the "context of the transaction" in assessing whether notice was sufficient. *Keebaugh*, 100 F.4th at 1018-20. Several cases have identified a variety of situations that put reasonably prudent users on notice that they are creating an ongoing relationship for which they should expect governing terms, such as downloading an app that offered in-app purchases to one's own device, completing a "full registration process" displaying notice multiple times in order to make a purchase, or purchasing a game and later extra items within the game. *Id.* at 1017, 1019-20 (citing *B.D. v. Blizzard Entertainment, Inc.*, 76 Cal.App.5th 931 (Cal. Ct. App. 2022); *Oberstein*, 60 F.4th 505).

---

rely on Defendant's evidence where Plaintiffs "fail to offer contradictory evidence" and "do not show or even argue [that Defendant's] evidence submitted to the Court is inaccurate." *Saeedy v. Microsoft Corp.*, 757 F. Supp. 3d 1172, 1193-94 (W.D. Wash. 2024).

ORDER - 5

Here, the context of the transaction was sufficient to signal a continuing relationship. Plaintiffs created accounts specifically to access ongoing rewards on a signup page that stated: "By creating an account, you agree to receive Urban Outfitters marketing emails to get first dibs on new arrivals, sales, exclusive content and more! You may unsubscribe at any time." (Schur Decl., ¶ 4, Ex. A.) As in *Keebaugh*, this was "different from a typical one-and-done interaction between the user and a . . . website[.]" 100 F.4th at 1020. In creating an account, "a consumer is more likely to expect a continuing relationship." *Saeedy v. Microsoft Corp.*, 757 F. Supp. 3d 1172, 1196 (W.D. Wash. 2024). Accordingly, users would "likely expect (and reasonable prudent users should expect) their access to the [UO Rewards program] to be continual." *Keebaugh*, 100 F.4th at 1020.

The UO Rewards signup page "also satisf[ies] the visual requirements to provide conspicuous notice that 'a reasonably prudent Internet user would have seen.'" *Keebaugh*, 100 F.4th at 1020 (quoting *Berman*, 30 F.4th at 856). Directly beneath the operative "Create an Account" button was text clearly advising that by creating an account, users agree to terms of use. (Schur Decl., ¶ 4, Ex. A.) Proximity enhances conspicuousness. *See Oberstein*, 60 F.4th at 517 ("The notices were not buried on the bottom of the webpage or placed outside the action box, but rather were located directly on top of or below each action button."). The gray text is clearly legible against a white background and there are few other elements to distract from the notice. The hyperlink to the Terms was also underlined, an increasingly common way to denote hyperlinks.

Plaintiffs argue that the signup page resembles the sign-in wrap agreements in *Berman*, where the notice, in "barely legible" "tiny gray font," contained hyperlinks that were underlined but not otherwise identifiable. (Transfer Resp. at 7 (quoting *Berman*, 30 F.4th at 856-57).) The

ORDER - 6

Ninth Circuit held that "[s]imply underscoring words or phrases . . . will often be insufficient to alert a reasonably prudent user that a clickable link exists." *Berman*, 30 F.4th at 857. As an initial matter, the Court notes that *Berman* involved users signing up for free samples, which does not presuppose an ongoing relationship. *See id.* at 853. Moreover, viewing the UO Rewards signup page as a whole, the visual aspects more closely resembled those in *Keebaugh* than *Berman*. "Unlike the notices at issue in *Berman*, the sign-in screen here lacks clutter and uses '[c]ustomary design elements denoting the existence of a hyperlink.'" *Keebaugh*, 100 F.4th at 1021 (quoting 30 F.4th at 857). In addition, the language below the Create an Account button "clearly denotes that continued use will constitute acceptance of the Terms[.]" *Id.* at 1021-22 (cleaned up). Reviewing the visual elements as a whole, and given the context of the transaction, "[t]he notice is conspicuous and puts the reasonable user on notice that they are agreeing to be bound by the Terms of Service." *Keebaugh*, 100 F.4th at 1021. The Court thus concludes that Plaintiffs agreed to the Terms, including the forum selection clause.

Plaintiffs contend, however, that no valid contract exists because a change-in-terms provision renders the Terms illusory.[3] (Transfer Resp. at 10-12.) Plaintiffs point to a section of the Terms governing UO Rewards, where a provision titled "Termination and Modification" states, in pertinent part, that Defendant "may, in our discretion, cancel, modify, restrict or terminate these [UO Rewards terms and conditions] and/or the [UO Rewards] Program or any

---

[3] Plaintiffs argue in their briefing that the Terms were "unenforceable" as illusory. (Transfer Resp. at 11.) At oral argument, they clarified that they were not raising a defense to enforcement, which a Pennsylvania court would determine, but challenging the existence of a contract at all. (*See* dkt. # 36.) Washington courts hold that if one side's obligations are illusory, no contract can be formed. *See, e.g.*, *Interchange Assocs. v. Interchange, Inc.*, 16 Wn. App. 359, 361 (Wash. Ct. App. 1976) ("When there is an absolute right to not perform at all, there is an absence of consideration" to support contract formation.); *Bascetta v. Advantage Equip. Leasing, L.L.C.*, 132 Wn. App. 1037, at *4-5 (Wash. Ct. App. Apr. 18, 2006) ("A purported offer that reserves the power to withdraw at will . . . is not an offer at all. It is an invitation to submit an offer. . . . It is not a contract.").

ORDER - 7

aspect or feature of the Program at any time without prior notice," even though such changes may affect benefits already earned.[4] (Schur Decl., Exs. B at 16, D at 27, G at 44.)

Plaintiffs rely solely on an employment wage and hour action where the Washington Supreme Court noted, in dicta, several out-of-state employment cases where courts "refused to enforce arbitration clauses as illusory promises to arbitrate where the agreement allows [the employer] to unilaterally modify the arbitration agreement." (Transfer Resp. at 11 (quoting *Burnett v. Pagliacci Pizza, Inc.*, 196 Wn.2d 38, 53 n.4 (Wash. 2020)).) The *Burnett* court expressly declined to reach the issue, however, as the appeal was resolved on other grounds. 196 Wn.2d at 53 n.4. While *Burnett* may signal how Washington courts regard employment contracts, this Court finds cases addressing consumer contracts more instructive.

With regard to consumer contracts, "Washington and Ninth Circuit courts have a history of enforcing contracts containing change-in-terms provisions." *Ekin v. Amazon Servs., LLC*, 84 F. Supp. 3d 1172, 1176 (W.D. Wash. 2014) (collecting cases). "In Washington, a contract is illusory only if it lacks all consideration and mutuality of obligation, e.g., the promisor has *no* obligations with regard to *any* parts of the contract." *In re Amazon Serv. Fee Litig.*, 705 F. Supp. 3d 1255, 1269 (W.D. Wash. 2023) (cleaned up), *aff'd*, 2025 WL 2268252 (9th Cir. Aug. 8, 2025). In the *Amazon Service Fee Litigation*, another court in this district upheld a change-in-terms provision enabling Amazon to revoke free grocery delivery because "[c]ancellation of one benefit does not render the contract 'completely illusory'" where Amazon continued providing other benefits. *Id.* Defendant, here, has not utilized the change-in-terms provision to remove a benefit. Plaintiffs do not contend that the benefits they received by signing up for the UO

---

[4] A provision applicable to the entire Terms similarly states that Defendant "reserves the right to update or modify these Terms and Conditions at any time without prior notice." (Schur Decl., Exs. B at 14, D at 20, G at 37.)

ORDER - 8

Rewards program were altered or diminished. Under these circumstances, the change-in-terms provision does not render the Terms illusory.

Accordingly, the Court concludes that Plaintiffs agreed to an enforceable forum selection clause.

### B.   The Forum Selection Clause Requires Transfer

The Terms' forum selection clause is mandatory, as it restricts the parties to the "exclusive jurisdiction" of Pennsylvania courts. *See Powell v. United Rentals (N. Am.), Inc.*, 2019 WL 1489149, at *4 (W.D. Wash. Apr. 3, 2019). The proper mechanism to enforce a mandatory forum selection clause is a motion to transfer venue pursuant to 28 U.S.C. § 1404(a). *Atl. Marine Const. Co. v. U.S. Dist. Ct. for W. Dist. of Texas*, 571 U.S. 49, 52 (2013).

"For the convenience of parties and witnesses, in the interest of justice, a district court may transfer any civil action to any other district or division where it might have been brought or to any district or division to which all parties have consented." 28 U.S.C. § 1404(a). While a § 1404(a) motion ordinarily requires consideration of a variety of public and private interest factors, a valid forum selection clause means that all private factors favor transfer and "a district court should transfer the case unless extraordinary circumstances unrelated to the convenience of the parties clearly disfavor a transfer." *Atl. Marine Const. Co.*, 571 U.S. at 52 (2013); *see id.* at 66 ("In all but the most unusual cases, . . . 'the interest of justice' is served by holding parties to their bargain."). The party violating the forum selection clause "must bear the burden of showing that public-interest factors overwhelmingly disfavor a transfer." *Id.* at 67. Here, Plaintiffs have raised no public-interest factors disfavoring transfer. Accordingly, the Court grants Defendant's Motion to Transfer.

ORDER - 9

**C.     This Court May Not Address the Arbitration Provision**

Defendant contends that, in making purchases on Defendant's website, Plaintiffs entered into a valid arbitration agreement applicable to their claims in this action. (Arb. Mot.) Plaintiffs disagree and further argue that arbitration agreements in place at various times differed materially, and that the arbitration agreement is illusory. (Arb. Resp.) The Court may not address these issues, however, because the forum selection provision takes precedence.

The forum selection provision here, titled "Governing Law and Disputes," provides that the "Terms will be governed by and construed under the substantive laws of the State of Pennsylvania and you irrevocably submit to the exclusive jurisdiction of the federal and state courts of the State of Pennsylvania." (Schur Decl., Ex. D at 29.)

The arbitration clause is contained within a broader dispute resolution agreement providing that all claims "will be resolved by this dispute resolution procedure and arbitration agreement[.]" (Schur Decl., Ex. E at 32.) First, parties must "try in good faith to settle" disputes informally by providing written notice and 30 days to respond. (*Id.*) Any remaining dispute "shall be resolved through binding individual arbitration" on an individual basis conducted by the American Arbitration Association. (*Id.* at 32-33.) The arbitrator shall determine the arbitrability of any dispute. (*Id.* at 32.) However, a dispute may be brought as an individual action in small claims court instead of arbitration. (*Id.*) The dispute resolution agreement "shall be governed by, and interpreted, construed, and enforced in accordance with the Federal Arbitration Act and, where applicable, the law of the Commonwealth of Pennsylvania." (*Id.* at 33.)

The plain text of these provisions makes clear that the forum selection clause applies to all disputes, while the arbitration clause applies only where informal resolution has failed and

ORDER - 10

small claims court is unavailable or not chosen by either party. Accordingly, the forum selection clause mandates that Pennsylvania courts determine the applicability of the arbitration clause to any particular dispute. The circumstances here are similar to *Powell*, where the defendant's "efforts to compel [the plaintiff] to arbitrate his claims fall within the scope of the Connecticut forum selection clause." *Powell*, 2019 WL 1489149, at *5. As in *Powell*, "transfer will effectuate the parties' contractual agreement to entrust a particular forum with 'exclusive jurisdiction' to determine threshold issues of arbitrability." *Id.*, at *8. Accordingly, this Court declines to rule on Defendant's Motion to Compel Arbitration.

### D.     Motion to Certify Question

Plaintiffs move to certify to the Washington Supreme Court the question of whether "a contract, including an arbitration agreement, is unenforceable as an illusory promise where it allows one party to unilaterally modify the arbitration agreement without prior notice[.]" (Cert. Mot. at 2.) Because the Court declines to rule on the enforceability of the arbitration provision, the Court also declines to rule on Plaintiff's Motion to Certify Question.

### IV.     CONCLUSION

For the foregoing reasons, the Court GRANTS Defendant's Motion to Transfer (dkt. # 16). The Clerk is directed to transfer this action to the Eastern District of Pennsylvania in accordance with Local Civil Rule 3(i) and close this file.

The Court declines to rule on Defendant's Motion to Compel Arbitration (dkt. # 18) and Plaintiffs' Motion to Certify Question (dkt. # 33).

Dated this 10th day of April, 2026.

MICHELLE L. PETERSON
United States Magistrate Judge

ORDER - 11